IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

ERIC L. JOYNER                          )
                                        )
v.                                      ) NO. 3-13-0298
                                        ) JUDGE CAMPBELL
BELLSOUTH                               )
TELECOMMUNICATIONS, LLC                 )

MEMORANDUM

Pending before the Court is Defendant's Motion for Summary Judgment (Docket No.44).

For the reasons stated herein, Defendant's Motion is GRANTED in part and DENIED in part.

FACTS

Plaintiff is a former customer service employee of Defendant BellSouth. Plaintiff's Amended

Complaint (Docket No. 5) alleges that Defendant discriminated and retaliated against Plaintiff in

violation of the Americans with Disabilities Act because of his disability and in violation of Title

VII of the Civil Rights Act of 1964 because of his race.[1]

Plaintiff asserts that he is HIV positive, has a prostate problem, and suffers from anxiety and

depression. He claims that during 2007 and 2008, he took intermittent Family and Medical Leave

Act ("FMLA") leave because of his medical conditions. Plaintiff also alleges that between July and

October of 2008, he took short-term disability leave because of his medical conditions.

Plaintiff alleges that in the fall of 2007, his supervisor, Ms. Pennell, approached him

concerning his medical condition and he told her he was HIV positive. Plaintiff avers that Pennell

---

[1]      Plaintiff voluntarily dismissed his FMLA claims and his claims of discrimination
and harassment based on sexual orientation and gender stereotyping. Docket No. 40.

disclosed this confidential information to other employees, in violation of the ADA,[2] which resulted

in harassment and negative comments by co-workers. Plaintiff also asserts that, because of this

harassment, he requested on several occasions to be moved to a different department, but Defendant

denied his request. In the summer of 2008, Plaintiff tendered his resignation twice to Defendant.

Both times, he changed his mind, and both times, Defendant allowed him to withdraw his

resignation, even though Defendant's customary practice is to consider resignations final.

Plaintiff contends that in May of 2008, Defendant issued Plaintiff a letter in lieu of

suspension, the third step in Defendant's disciplinary process concerning absences[3], for missing days

which were not approved. The letter stated that unless improvement to a satisfactory level was made

and sustained over a reasonable period of time, Plaintiff's employment would be terminated.

Plaintiff contends that he tried to get the letter in lieu of suspension removed from his record by

contacting his web center manager and the corporate office, but they would not remove the letter.

Plaintiff alleges that, on May 11, 2009, AT&T security accused Plaintiff of "stealing

company time" through absences in March of that year. Plaintiff asserts that soon thereafter, he was

hospitalized and his physicians ordered him to take FMLA leave again.[4] On May 26, 2009, Plaintiff

filed his first charge with the Equal Employment Opportunity Commission ("EEOC"), alleging

disability discrimination and retaliation. On August 17, 2009, when Plaintiff returned to work, he

---

[2]     Plaintiff claims that he reported Pennell's disclosure to Defendant's hotline in June of 2008 and "believes" Defendant investigated his complaint and demoted and suspended Pennell.

[3]     Defendant's progressive attendance policy's formal steps for discipline are: (1) counseling, (2) warning, (3) suspension or letter in lieu of suspension, and (4) termination. By May of 2008, Plaintiff had progressed to the third step of this process.

[4]     Throughout 2008, Plaintiff was hospitalized off and on several times with chest pain and shaking and was diagnosed with depression, anxiety and panic attacks.

was fired for excessive absenteeism and tardiness. On October 6, 2009, Plaintiff filed a second charge with the EEOC, alleging discrimination based upon race, sex and retaliation.

Plaintiff asserts claims for disability discrimination and retaliation under the ADA and for racial and gender discrimination and retaliation[5] under Title VII. He also alleges a hostile work environment claim based on his disability and his race. He alleges that his "disability" is AIDS, anxiety and depression. Although the Amended Complaint does not identify Plaintiff's race, his Response to Defendant's Motion indicates that Plaintiff is African-American.

Defendant has moved for summary judgment on all of Plaintiff's claims.

## SUMMARY JUDGMENT

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Pennington v. State Farm Mut. Automobile Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id*.

 In deciding a motion for summary judgment, the Court must review all the evidence, facts and inferences in the light most favorable to the nonmoving party. *Van Gorder v. Grand Trunk*

---

[5] Although Plaintiff asserts that he did not raise a retaliation claim based upon race (Docket No. 70-1, n. 1), the Amended Complaint includes such a claim at paragraph 35. Nonetheless, the Court finds that Plaintiff has abandoned any claim for retaliation based upon race.

*Western Railroad, Inc.*, 509 F.3d 265, 268 (6th Cir. 2007). The Court does not, however, weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). The Court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question. *Id.* The mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient to survive summary judgment; rather, there must be evidence on which the jury could reasonably find for the nonmoving party. *Rodgers*, 344 F.3d at 595.

## TITLE VII

Hostile Work Environment

Defendant contends that Plaintiff's hostile work environment claim based upon race is procedurally defective because Plaintiff did not exhaust it administratively. In other words, it was not included in Plaintiff's EEOC charge. Plaintiff's October 6, 2009 EEOC charge[6] alleges discrimination based upon race, sex and retaliation. The adverse employment action identified is Plaintiff's discharge on August 17, 2009. Docket No. 45-7. Plaintiff does not allege a hostile work environment in this charge.

An employee alleging employment discrimination in violation of Title VII must first file an administrative charge with the EEOC within a certain time after the alleged wrongful act(s). 42 U.S.C. § 2000e-5(f)(1); *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010). As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in his EEOC

---

[6] Plaintiff's May 26, 2009 EEOC charge alleges discrimination based upon disability and retaliation, not race. The adverse employment actions are harassment, suspension and accusations of stealing time, all in retaliation for his complaints under the ADA and/or because of his disability. This charge does not allege any misconduct based upon race.

charge. *Id.* The judicial complaint must be limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination. *Tisdale v. Federal Express Corp.,* 415 F.3d 516, 527 (6th Cir. 2005); *Jones v. Michigan Dept. of Corrections*, 2014 WL 6473710 at * 5 (W.D. Mich. Nov. 19, 2014). Where facts related to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim. *Id.* Inclusion in an EEOC charge of discrete acts of discrimination to support a claim of disparate treatment cannot, standing alone, support a subsequent uncharged claim of hostile work environment unless the allegations of the complaint in court can be reasonably inferred from the facts alleged in the EEOC claim. *Kuhn v. Washtenaw County*, 709 F.3d 612, 627 (6th Cir. 2013).

Plaintiff's only EEOC allegations concerning race are in the October 6, 2009 EEOC charge, and those complaints related to discrimination and retaliation only. The charge indicates that the discrimination took place on August 17, 2009, the date he was fired, and "continuing action" is not checked. Nothing in this EEOC charge would reasonably lead to an EEOC investigation about a racially hostile work environment. Accordingly, the Court is without jurisdiction to hear Plaintiff's claim for a racially hostile work environment, and that claim is dismissed.

Disparate Treatment

In order to establish a claim for disparate treatment in violation of Title VII based upon race (absent direct evidence), Plaintiff must show that (1) he is a member of a protected group; (2) he was subjected to an adverse employment action; (3) he was qualified for the position; and (4) he was replaced by a person outside the protected class or similarly situated non-protected employees were treated more favorably. *Vincent v. Brewer Co.*, 514 F.3d 489, 494 (6th Cir. 2007). It is undisputed that Plaintiff is African-American and that he was fired. Defendant does not allege, for purposes

of this Motion, that Plaintiff was not qualified for his job. Defendant contends that Plaintiff cannot show that he was replaced by a person outside the protected class or that similarly situated non-protected employees were treated more favorably.

To be similarly situated, the individuals with whom Plaintiff seeks to compare his treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it. *Jackson v. FedEx Corporate Servs., Inc.*, 518 F.3d 388, 393 (6th Cir. 2008) (citing *Mitchell v. Toledo Hospital*, 964 F.2d 577, 583 (6th Cir. 1992)). The Sixth Circuit has held that the *Mitchell* factors should not be rigidly applied. *Jackson*, 518 F.3d at 394. The appropriate test is to look at those factors relevant to the factual context, as opposed to a requirement that a plaintiff demonstrate similarity in all respects. *Id*.

Here, Plaintiff has not shown that he was replaced by someone outside the protected class. He argues that he and a black co-worker, Huey, were both investigated for FMLA fraud and their white "coach," Ms. Pennell, was not. First of all, being investigated for FMLA fraud is not an adverse employment action claimed by Plaintiff. Secondly, the relevant question would be whether a similarly-situated white employee (who had progressed through all the stages of Defendant's attendance policy discipline, been issued a letter in lieu of suspension, and been told that unless improvement to a satisfactory level was made and sustained over a reasonable period of time, his or her employment would be terminated), who then accumulated further absences, was not fired.

Plaintiff has offered no evidence concerning the white employee to which he compares himself, Brandy McFee, other than that McFee missed 37 hours without being fired. We do not know whether McFee was approved for FMLA leave or short-term disability and, if so, how many

6

days she had already taken; whether McFee was counseled, warned or given a letter in lieu of suspension for attendance problems; or whether McFee had any other reasons, excused or not, to have missed work. Plaintiff has not shown the specific circumstances of any white employee's requests for leave, the bases for their requests, how much leave they had already taken or how much leave they requested.[7]

Moreover, Plaintiff has failed to establish that decisions concerning his absences, his discipline or his termination had anything to do with his race. Plaintiff admits he never filed a complaint or report to Defendant about race discrimination or racial harassment. Docket No. 45-1, pp. 72-73. For these reasons, Plaintiff's claim for racial discrimination under Title VII is dismissed.

AMERICANS WITH DISABILITIES ACT

Disclosure of Confidential Information

Plaintiff alleges that Defendant (specifically, Ms. Pennell) failed to keep Plaintiff's medical condition confidential in violation of the ADA. Plaintiff contends that Ms. Pennell disclosed his condition to a co-worker on February 25, 2008. Plaintiff's first EEOC charge was on May 26, 2009. As noted above, the ADA requires that a plaintiff timely file a charge of discrimination with the EEOC. 42 U.S.C. § 12117(a); 42 U.S.C. § 2000e-5(e)(1). For each discrete violation of the ADA, Plaintiff had 300 days to file his charge. *Id.* Without needing to decide whether such disclosure is a violation of the ADA, the Court finds that Plaintiff did not timely file a charge of discrimination

---

[7] Defendant's Lead Employee Relations Manager since 2010 stated that she was not aware of any other BellSouth employee who amassed 29 partial or full days of summarized absence after a step of discipline who did not receive the next step of progressive discipline as a result. Docket No. 46, ¶ 6.

with the EEOC based upon this alleged disclosure. Therefore, the Court is without jurisdiction to hear Plaintiff's claim for disclosure of confidential information.

Plaintiff argues that this claim should fall under the continuing violations theory because it is related to his hostile work environment and failure to accommodate claims. The Court disagrees. Disclosure of confidential information is a discrete act. Moreover, Plaintiff did not exhaust a claim for unlawful disclosure in either of his two EEOC charges. Plaintiff's claim for disclosure in violation of the ADA is dismissed.

Hostile Work Environment

Plaintiff also contends that Defendant subjected him to a hostile work environment based upon his disability. Similarly to Title VII, to establish a hostile work environment claim under the ADA, Plaintiff must show: (1) he was disabled; (2) he was subject to unwelcome harassment; (3) the harassment was because of his disability; (4) the harassment unreasonably interfered with his work performance; and (5) Defendant knew or should have known about the harassment and failed to take corrective measures. *Hardenburg v. Dunham's Athleisure Corp.*, 963 F.Supp.2d 693, 707 (E.D. Mich. 2013).

For a plaintiff to have suffered from a hostile work environment, the workplace must have been permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and to create an abusive working environment. *Hardenburg*, 963 F.Supp.2d at 707. Conduct that is merely offensive will not suffice to support a hostile work environment action. *Id*. The ADA does not prohibit all verbal or physical

8

harassment in the workplace; rather, the ADA is directed only at discrimination because of a disability. *Johnson v. City of Mason*, 101 F.Supp.2d 566, 577 (S.D. Ohio 2000).[8]

Many of the discrete acts upon which Plaintiff bases his hostile work environment claim overlap with the discrete acts about which he claims Defendant discriminated and retaliated against him. Moreover, many of the discrete acts upon which Plaintiff bases this claim overlap with his previously-dismissed FMLA claims. The issue is not whether each incident of harassment standing alone is sufficient to sustain the hostile work environment claim, but whether, taken together, the reported incidents make out such a case. *Simmons v. American Apartment Management Co., Inc.*, 1 F.Supp.3d 838, 853 (E.D. Tenn. 2014). Whether harassing conduct is sufficiently severe or pervasive to establish a hostile work environment is quintessentially a question of fact. *Id.*

It may be that at trial, the factfinder will conclude that Plaintiff was not subjected to harassment that was sufficiently severe or pervasive to create a hostile work environment and/or that no alleged harassment was because of his disability. This inquiry, however, involves factual disputes, and the Court cannot find that Defendant is entitled to judgment as a matter of law on this claim. Accordingly, Defendant's Motion for Summary Judgment on the issue of hostile work environment based on disability is denied.

Disparate Treatment

---

[8] In determining whether a work environment is abusive, the Court must consider the entirety of the evidence presented, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance. *Flowers v. Southern Regional Physician Services, Inc.*, 247 F.3d 229, 236 (5th Cir. 2001).

The ADA prohibits employment discrimination "against a qualified individual with a disability."[9]  42 U.S.C. § 12112(a).  In order to establish a violation of the ADA, a person must establish that:  (1) he has a disability, as defined in the ADA; (2) he is qualified to perform the essential functions of the position, with or without reasonable accommodation; and (3) he suffered an adverse employment action because of his disability. *Demyanovich Cadon Plating & Coatings, LLC*, 747 F.3d 419, 433 (6th Cir. 2014). The ADA bars discrimination "because of" an employee's disability, meaning that it prohibits discrimination that is a "but-for" cause of the adverse employment action.  *Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312, 314 (6th Cir. 2012); *Molina-Parrales v. Shared Hospital Servs. Corp.*, 992 F.Supp.2d 841, 855 (M.D. Tenn. 2014).

If the plaintiff establishes this *prima facie* case, then the burden shifts to the defendant to offer a legitimate, nondiscriminatory reason for its adverse action. *Sjostrand v. Ohio State University*, 750 F.3d 596, 599 (6th Cir. 2014). If the defendant makes this showing, which is a burden of production, not persuasion, the plaintiff must then present evidence allowing a jury to find that the defendant's explanation is a pretext for unlawful discrimination.  *Id.*

For purposes of this Motion, Defendant does not dispute that Plaintiff's HIV/AIDS status constitutes a "disability." [10] Indeed, for purposes of this Motion, Defendant does not dispute that Plaintiff could make out a *prima facie* case of discrimination.  Defendant argues, however, that its

---

[9]    "Qualified individual with a disability" is defined as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).

[10]    On the other hand, however, Defendant notes that Plaintiff's absences were allegedly caused by many things other than his HIV/AIDS status.  For example, Plaintiff asserts that he was hospitalized for chest pain, shaking PTA, depression, anxiety, panic attacks, chest pounding, shortness of breath, numbness in his arm, and hallucinations.

reason for firing Plaintiff - his unacceptable attendance - is a legitimate, nondiscriminatory reason, and the Court agrees.

Thus, the burden shifts back to Plaintiff to show that Defendant's reason is merely a pretext for disability discrimination. Plaintiff may make this showing by demonstrating that (1) the proffered reason had no basis in fact, (2) the proffered reason did not actually motivate the discharge, or (3) the proffered reason was insufficient to motivate the discharge. *Jones v. Potter*, 488 F.3d 397, 406 (6th Cir. 2007). The ultimate burden of persuading the trier of fact that the Defendant intentionally discriminated against him remains at all times with the Plaintiff. *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 392 (6th Cir. 2008).

Plaintiff argues that pretext is shown by the numerous times when Defendant was ready to fire him, by Defendant's alleged violations of the company's leave policies, by the miscalculations of his available leave, by Defendant's not using its discretion reasonably to allow Plaintiff's absences or to retroactively erase disciplines or absences, and by Defendant's delays in confronting Plaintiff about certain absences. The Court finds that these allegations do not show pretext.

Delays in investigating do not establish pretext, especially under the circumstances presented here, where Plaintiff had already proceeded through three steps of Defendant's progressive attendance policy's formal steps - counseling, warning and suspension or letter in lieu of suspension. Moreover, Plaintiff had twice resigned in the summer of 2009 and Defendant twice permitted him to withdraw his resignation when he changed his mind.

In addition, Plaintiff cannot show pretext by questioning the business judgment and decisions of Defendant. A plaintiff cannot establish pretext so long as the employer made a reasonably informed and considered decision before taking the adverse employment action. *Foster v. Spring*

11

*Meadows Healthcare Center, LLC*, 2013 WL 829363 at * 10 (M.D. Tenn. March 6, 2013) (*citing Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6ᵗʰ Cir. 1998)). Where the employer can demonstrate an honest belief in its proffered reason, an inference of pretext is not warranted. *Seeger v. Cincinnati Bell Telephone Co., LLC*, 681 F.3d 274, 285 (6ᵗʰ Cir. 2012). An employer's proffered reason is considered honestly held where the employer can establish it reasonably relied upon the particularized facts that were before it at the time the decision was made. *Id.* A plaintiff is required to show more than a dispute over the facts upon which the decision was based. *Id.*

Here, Defendant's decisions - in applying Plaintiff's leave time, working with Plaintiff (such as allowing his resignations to be withdrawn) to deal with his medical conditions, proceeding through the company's discipline proceedings step-by-step, requiring that attendance policies be followed, and warning Plaintiff about his absences - were reasoned decisions based upon the information available to Defendant at the time. Plaintiff does not deny his many absences; he argues those absences should not have counted "against him." Plaintiff does not deny that Defendant had previously issued a series of progressive disciplinary actions because of his absences and tardiness; he argues that at least one of those disciplinary actions should be retroactively rescinded.

The ADA does not prohibit an employer from discharging someone for misconduct, even if the misconduct was causally related to a disability. *Maddox v. University of Tenn.*, 62 F.3d 843, 847 (6ᵗʰ Cir. 1995), *abrogated on other grounds*, *Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312 (6ᵗʰ Cir. 2012); *Stanciel v.* Donahoe, 570 Fed. Appx. 578 (6ᵗʰ Cir. 2014) (same); Staley *v. Gruenberg*, 575 Fed. Appx. 153 (4ᵗʰ Cir. 2014) (law well-settled that the ADA is not violated when an employer discharges an individual based on his misconduct, even if the misconduct is related to a disability).

The record reflects that Plaintiff was fired because of his absences and his absences allegedly were because of his disability; but Defendant is not required to suspend its disciplinary procedures for absences just for Plaintiff or to allow Plaintiff to be absent more often than other employees are allowed to be absent. Moreover, Plaintiff has not shown that he was treated any differently than non-disabled employees. The Court finds that Plaintiff has not shown that Defendant's reasons for firing him were pretext for disability discrimination, and Plaintiff's disparate treatment claim based on disability is dismissed.

Failure to Accommodate

The ADA prohibits discriminating against a qualified individual with a disability by not making reasonable accommodations to that person's known physical or mental limitations. *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1108 (6th Cir. 2008). A "reasonable accommodation" includes job restructuring, part-time or modified work schedules, reassignment to a vacant position, or other similar accommodations. *Id.* (citing 42 U.S.C. § 12111(9)). A reasonable accommodation is one that is objectively reasonable in the sense both of efficacious and of proportional to costs. *Henschel v. Clare County Road Commissioner*, 737 F.3d 1017, 1024-25 (6th Cir. 2013). The reasonableness of a requested accommodation is generally a question of fact. *Id.* at 1025. An ADA plaintiff bears the initial burden of proposing an accommodation and showing that the accommodation is objectively reasonable. *Talley*, 542 F.3d at 1108. An employer then has the burden of persuasion to show that the accommodation would impose an undue hardship. *Id.*

Plaintiff claims that he requested the following accommodations for his disability: (1) to have the letter-in-lieu-of-suspension removed from his record; (2) to be given time off due to his illness; and (3) to be allowed to transfer to a different department. Defendant argues that Plaintiff never

requested an ADA accommodation. Regardless, even if Plaintiff did request an ADA accommodation, as he asserts, Plaintiff has not shown that those proposed accommodations were reasonable.

Plaintiff asserts that a transfer is a reasonable accommodation, but he fails to show that there was a vacant position to which he could be transferred. That is Plaintiff's burden.[11] Plaintiff asserts that his request to have his prior disciplinary record expunged is also reasonable, but he fails to show how expunging his disciplinary record is objectively reasonable in light of Defendant's failure to allow other employees to erase their prior disciplines. Plaintiff does not deny that he was given holidays, vacation days and both FMLA and short-term disability leave.

For all these reasons, Plaintiff has failed to carry his burden to show a genuine issue of material fact with regard to his failure to accommodate claim, and Defendant is entitled to judgment as a matter of law on that claim.

Retaliation

To state a claim for ADA retaliation, Plaintiff must establish that (1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) a causal connection existed between his protected activity and the adverse action. *Molina-Parrales*, 992 F.Supp.2d at 854. As with his disparate treatment claim, if Plaintiff establishes this *prima facie* case, the burden shifts to Defendant to articulate a legitimate, nondiscriminatory reason for its action. Then Plaintiff must show that Defendant's reason is merely a pretext for retaliation. *Id*.

---

[11]     Plaintiff's Amended Complaint alleges that he requested a transfer because of the disclosure of his medical condition and the hostile work environment (Docket No. 5, ¶ 13).

For the same reasons that Plaintiff has not shown Defendant's legitimate nondiscriminatory reason for firing him to be pretext for disability discrimination, Plaintiff has not shown that the adverse employment action was pretext for retaliation. Defendant's action was taken because of the number of Plaintiff's absences, as the final step under the company's progressive discipline policy.

CONCLUSION

For all the above reasons, Defendant's Motion for Summary Judgment (Docket No. 44) is GRANTED in part and DENIED in part. Plaintiff's claims under Title VII and his claims for disparate treatment, disclosure of confidential information, failure to accommodate and retaliation under the ADA are DISMISSED. Plaintiff's claim for hostile work environment based upon his disability will be tried, as previously ordered (Docket No. 38), on April 14, 2015.

IT IS SO ORDERED.

_____
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE